# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No.: 25-269V

| | |
|---|---|
| * * * * * * * * * * * * * | |
| THOMAS STOKES, * | |
| Petitioner, * | Chief Special Master Corcoran |
| v. * | Filed: August 14, 2026 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, * | |
| Respondent. * | |
| * * * * * * * * * * * * * | |

*Leigh Finfer,* Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Meghan Murphy,* Department of Justice, Washington, D.C., for Respondent.

**DECISION GRANTING AWARD OF ATTORNEY'S FEES AND COSTS**[1]

On February 14, 2025, Thomas Stokes filed a petition for compensation under the National Vaccine Injury Compensation Program.[2] Petition (ECF No. 1). Petitioner alleged that as a result of receiving an influenza ("flu") vaccine on October 5, 2022, he developed autoimmune encephalopathy. *Id.* at ¶ 3. On February 26, 2026, the case was dismissed on Petitioner's motion. Decision (ECF No. 20); Motion to Dismiss (ECF No. 19).

Petitioner filed a motion for a final award of fees and costs on March 31, 2026, requesting a total of $19,076.34 ($15,450.00 in fees and $3,626.34 in costs). Petitioner's Fees Motion (the "Motion") (ECF No. 26). Respondent objected to the Motion on April 14, 2026, arguing that the Petitioner's claim lacked reasonable basis. Respondent's Response ("Response") (ECF No. 28).

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet**. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Respondent's reasonable basis challenge relates to whether Petitioner could demonstrate six months of post-onset sequelae on the basis of the objective record. *See* Section 11(c)(1)(D)(i) (statutory six-month severity requirement). Respondent emphasized that records submitted with Petitioner's claim demonstrate that approximately four and half months after Petitioner's acute encephalopathy, he had a normal neurological examination, except for a report that he was experiencing "mild forgetfulness." Response at 4 (citing Ex. 4 at 11). But by Petitioner's next neurology appointment, on June 26, 2023 (more than six months post-onset), Petitioner reported that his "mild forgetfulness" had resolved, and he denied any other new neurological issues. *Id.* (citing Ex. 4 at 3—4).

Petitioner subsequently filed a reply, stating that he had met all elements of a *prima facie* claim, and contending that counsel acted reasonably in filing Petitioner's claim, since the issue of whether the claim could meet the Act's "severity requirement" was reasonably disputed. Reply at 29 (ECF No. 29). He characterizes the "mild forgetfulness" reported in the winter of 2023 as resolved no sooner than between four and eight months after injury onset. Reply at 4. This would thus establish severity (which would only need proof of symptoms lasting through mid-April 2023). *Id.* And he promptly dismissed his claim when an expert could not be retained to bulwark the claim. *Id.* at 5. Petitioner also requested an additional $1,881.50 in attorneys' fees as a result of drafting a substantive reply to Respondent. Reply at 5.

For the reasons set forth below, Petitioner is entitled to an award of final fees and costs in the amount of $20,957.84.

## II. Reasonable Basis

### A. Legal Standard

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorneys' fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when a petition was untimely filed). It has been noted that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (June 29, 2012). It may be the only federal fee-shifting statute that permits unsuccessful litigants to recover fees and costs.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs in a case in which compensation was not awarded

only if "that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs*., 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries: (1) a subjective one when assessing whether a petition was brought in good faith,[3] and (2) an objective one when ascertaining whether reasonable basis existed. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Good faith is a subjective test, satisfied through subjective evidence"); *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007) ("[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation."); *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (May 15, 2014)) (addressing the objective requirements of reasonable basis).

Reasonable basis looks to objective proof in the record in support of a claim. *Cottingham,* 971 F.3d at 1344. The reasonable basis requirement thus examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.*, 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.' " Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I,* 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333 (Fed. Cl. 2022) ("*Cottingham II"*). "[T]he Federal Circuit's statement that a special master

[3] Respondent is not challenging Petitioner's good faith in bringing the petition. While I do not find any reason to doubt Petitioner's good faith, this matter hinges on reasonable basis, and thus any further discussion of good faith is unnecessary.

'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II,* 159 Fed. Cl. at 333 (citing *Cottingham I,* 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. The reasonable basis which excited when a claim was filed may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

**B. Objective Evidence Provided by Medical Records**

The medical records reveal that Petitioner received the flu vaccine on October 5, 2022. Ex. 1 at 5. Seven days later, on October 12, 2022, Petitioner was taken to the Northeast Torresdale Hospital emergency department by ambulance for an altered mental status and concerns for a stroke. Ex. 8 at 38. Petitioner was admitted to the step-down unit because he demonstrated severe expressive aphasia. *Id.* at 38—40. Petitioner's wife reported to neurologist, Dr. Christopher Johnston, that Petitioner had been feeling "generally ill and fatigued since [August] 2022," but had run a 5K the weekend of October 8-9, 2022. By October 12, 2022, however, Petitioner was confused and his speech became illogical. *Id.* at 321. Dr. Johnston diagnosed Petitioner with acute encephalopathy of unclear etiology and ordered a brain MRI, EEG, and a lumbar puncture. *Id.* at 324.

On October 14, 2022, Dr. Johnston re-evaluated Petitioner, and noted that the MRI was skewed due to motion, but showed "no clear pathology on visible images." Ex. 8 at 111. Petitioner still had impaired mental status. *Id.* Dr. Johnston recommended "empiric IVIG" and wanted to perform a repeat lumbar puncture for "full autoimmune encephalitis and paraneoplastic encephalitis panel" tests. *Id.* Later that day, Petitioner was transferred to the ICU, sedated and intubated, for airway protection as he became more agitated. *Id.* at 330. IVIG was discontinued after his lumbar puncture, MRIs were considered "grossly negative," and Petitioner was diagnosed with "metabolic/multifactorial encephalopathy." *Id.* The physicians at Jefferson Health consulted with Penn Neurology and determined that Petitioner's encephalopathy was "not felt to be autoimmune in nature." *Id.* at 330.

Between October 14-17, 2022, Petitioner had three EEGs, which showed moderate or severe diffuse background slowing with no seizures or epileptiform discharges. *See* Ex. 8 at 198 (10/17/22 EEG results showed "severe diffuse background slowing with discontinuity…which is non-specific to etiology."); *Id.* (10/16/22 EEG results were "moderate diffuse cerebral dysfunction, which is nonspecific with regard to etiology."); *Id.* at 199 (10/15/22 EEG results showed "moderate diffuse cerebral dysfunction, which is nonspecific with regard to etiology"). Petitioner's

labs also came back negative for possible infectious causes, such as Lyme, hepatitis B and C, and herpes simplex virus and prophylactic antibiotics were discontinued. *Id.* at 90, 228, 498.

On October 18, 2022, Petitioner was extubated. Ex. 8 at 247. On October 21, 2022, Petitioner's mental status had improved, although he was still disoriented to place. *Id.* at 292. The attending physician consulted with neurology and it was agreed that Petitioner should receive two additional rounds of IVIG, as Petitioner was still demonstrating some mental dysfunction. *Id.* at 290. On October 22, 2022, Petitioner's family reported to Dr. Felipe that he was "more improved" from the day before. *Id.* at 305. The plan was to discharge Petitioner later that day if he was stable after the next dosage of IVIG. *Id.* at 309.

Petitioner was discharged on October 23, 2022 with a diagnosis of "acute encephalopathy," and the history provides that "[a] decision to treat for acute autoimmune encephalitis/encephalopathy (possibly from vaccination exposure) was made." Ex. 8 at 90-91.

Five days after discharge, Petitioner had a follow-up appointment with neurologist Dr. Cindy Wang. Ex.4 at 20. Petitioner's physical exam was notable for "questionable subtle decreased eye blinks," and "relatively depressed" reflexes at the right ankle. *Id.* at 22. An EEG was scheduled for November 2022 and his follow-up appointment was scheduled for February 28, 2023. *Id.* at 25. At a November 3, 2022 appointment with his primary care physician, Petitioner reported his hospitalization, but noted that he had returned to work, and was able to focus and process information at baseline. Ex. 2 at 6.

Petitioner had his follow-up appointment with Dr. Wang on February 28, 2023. Ex. 4 at 11. Dr. Wang noted that Petitioner's EEG from November 2022 was normal. *Id.* There were no additional notations regarding abnormal reflexes. *Id.* at 13. Dr. Wang wrote that Petitioner "continues to have mild forgetfulness," however, and set a second follow-up appointment for June 26, 2023. *Id.* at 13, 19. At that appointment, Petitioner's physical examination was normal, Dr. Wang noted that Petitioner was "back to normal neurologically." *Id.* at 7.

The remaining records after the June 26, 2023 neurology appointment are focused on knee pain, urinary issues, and treatment for an upper respiratory infection. *See* Ex. 9 at 16, 20—23, 37.

### C. Existence of Reasonable Basis in this Case

I find there is sufficient objective basis to entitle Petitioner to a fees and costs award—albeit barely so. Respondent is correct that by June 26, 2023, it did not appear that Petitioner was experiencing any residual symptoms of the neurological injury that began on October 12, 2022. However, at the late-February neurology visit, Dr. Wang indicated that she wanted to "monitor" Petitioner's neurological status and set a follow-up appointment for three months later, while also

noting the forgetfulness symptoms which could reflect a residual effect of the alleged prior encephalopathy. *See* Ex. 4 at 7. Thus, it cannot be said that as of that date (more than four months post-vaccination) Petitioner was not still experiencing symptoms – or that they were expected to resolve any time in the next month or so. And it is conceivable that Petitioner could have produced additional evidence, such as an expert report or an affidavit, to bridge the gap between February 2023 and June 2023, further corroborating the existence of this symptom sufficient to cross the six-month "line."

Accordingly, and given the exceedingly light standard that governs reasonable basis, I find that a fees award is appropriate despite the claim's dismissal.

## III. Appropriate Amount to be Awarded

### A. Calculation of Fees

Only "reasonable" fees or costs may be awarded in the Program. Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera*, 515 F.3d at 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensely*, 461 U.S. at 429–37.

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis*" exception). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

The hourly rates requested by Petitioner for his attorneys and paralegals for the work performed in this matter between 2022-26 are consistent with rates that have been previously awarded by myself and other special masters, and I find them to be reasonable. *See Mazza v. Sec'y of Health & Hum. Servs.,* No. 20-1340V, 2026 WL 1552839, at *2-3 (Fed. Cl. Spec. Mstr. Apr. 30, 2026); *Aguayo v. Sec'y of Health & Hum. Servs.,* No. 23-1327V, 2026 WL 2111506, at *2-3 (Fed. Cl. Spec. Mstr. June 24, 2026). And the billing invoices demonstrate that the time spent on

the matter was reasonable, given the posture of the case and the outcome. I find no reason to reduce the attorneys' fees requested in this matter.

### B. Calculation of Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States,* 52 Fed. Cl. 667, 670 (2002); *Perreria v. Sec'y of Dep't of Health & Hum. Servs.,* 27 Fed. Cl. 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.,* No. 10-243V, 2013 WL 5367670, at * 16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013).

Petitioner is requesting his attorneys be reimbursed for a total of $3,626.34 in costs. Motion at 2. Nearly half of the costs are associated with filing fee and obtaining medical records, and those were substantiated and reasonably incurred. Additionally, Petitioner is requesting that Dr. Syed Rizvi be reimbursed $1,500.00 at an hourly rate of $500.00 for three hours of work. Fees App. Exhibit B at 27. Though Dr. Rizvi did not provide a detailed invoice, the hourly rate and hours expended appear to be reasonable, and he did not charge excessively for his work. Accordingly, no reductions will be made to Dr. Rizvi's fee request.

## CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a final fees award, I **GRANT** Petitioners' Motion for Attorney's Fees and Costs, and award a total of **$20,957.84 (reflecting $17,331.50 in attorney's fees and $3,626.34 in costs) to be paid through an ACH deposit to Petitioners' counsel's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[4]

**IT IS SO ORDERED.**

**/s/ Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

[4] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.